UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

UNITED STATES OF AMERICA,

v.

RICARDO PATINO VARGUS,

Petitioner.

Criminal Action No. 3:10-CR-308-17
Civil Action No. 3:12-CV-542

**MEMORANDUM OPINION**

THIS MATTER is before the Court on *pro se* Petitioner Ricardo Patino Vargus Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") (ECF No. 866). For the reasons set forth below, the Court DENIES the § 2255 Motion.

I.     **BACKGROUND**

a.   ***Factual Background***

This case relates to Petitioner Ricardo Patino Vargus' ("Vargus" or "Petitioner") involvement in a Fraudulent Document Enterprise ("FDE") that specialized in selling high-quality false identification cards to illegal aliens in the United States. At the time of a nationwide takedown on November 18, 2010, the FDE had 19 cells in 11 states, including 3 in Virginia. The entire operation was supervised within the United States by Israel Cruz Millan ("Millan"), also known as "El Muerto." In each city where the organization operated, Millan placed a cell manager to supervise a number of "runners," the lower level members of the organization who distributed business cards advertising the organization's services and helped facilitate transactions with customers.

The cost of fraudulent documents varied depending on the location, with counterfeit Resident Alien and Social Security cards typically selling from $150 to $200. Each cell allegedly

1

maintained detailed sales records and divided the proceeds between the runner, the cell manager, and the upper level managers in Mexico.

At the time of his arrest on November 18, 2010, Petitioner served as the manager for the Pawtucket, Rhode Island cell. His managerial role for this cell spanned back to at least June 2010, and he was responsible for the unlawful distribution of at least 250 fraudulent identification documents.

### b. *Procedural Background*

On December 14, 2010, a federal grand jury in the Eastern District of Virginia returned the first superseding two-count indictment (ECF No. 95) against Petitioner, charging him with (1) conspiracy to possess, produce, and transfer false identification documents and possess a document-making implement, in violation of 18 U.S.C. § 1028(f); and (2) money laundering conspiracy, in violation of 21 U.S.C. § 1956(h). A second superseding indictment was returned on February 23, 2011 (ECF No. 173), and a third superseding indictment was returned on February 24, 2011 (ECF No. 176), charging Petitioner with: (1) Racketeering Conspiracy, in violation of 18 U.S.C. § 1962(d) ("Count One"); (2) conspiracy to possess, produce, and transfer false identification documents and possess a document-making implement, in violation of 18 U.S.C. § 1028(f) ("Count Eleven"); and (3) money laundering conspiracy, in violation of 21 U.S.C. § 1956(h) ("Count Twelve").

On April 18, 2011, Petitioner pled guilty to Count One of the third superseding indictment. (*See* Plea Agt., ECF No. 221.) On July 21, 2011, this Court sentenced Petitioner to 43 months' imprisonment, followed by 2 years of supervised release. Petitioner did not appeal his sentence.

On July 24, 2012, Petitioner filed the instant § 2255 Motion. In his § 2255 Motion, Petitioner alleges one ground for relief:

> Ground One:   Ineffective assistance of counsel related to attorney's failure to take advantage of a two-level downward departure in exchange for the defendant's deportation concessions in the plea

agreement

The United States filed a response in opposition on August 1, 2012 ("Gov'ts Resp.") (ECF No. 875), providing *Roseboro* notice to Petitioner (ECF No. 876), and Petitioner subsequently filed a reply on August 20, 2012 ("Reply Mem.") (ECF No. 882).  The issue is now ripe for review.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255 ("§ 2255"), a prisoner in federal custody may attack his sentence on four grounds: (1) the sentence violates the Constitution or the laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a); *see also Hill v. United States*, 368 U.S. 424, 426–27 (1962). A claim which does not challenge the constitutionality of a sentence or the court's jurisdiction is cognizable in a § 2255 motion only if the alleged violation constitutes a "miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979). To prevail under § 2255, the movant bears the burden of proof by a preponderance of the evidence. *Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958); *United States v. King*, 36 F. Supp. 2d 705, 707 (E.D. Va. 1999). A *pro se* petitioner is held to a less exacting standard than an attorney in drafting his petition. *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Therefore, the Court generously interprets Petitioner's factual allegations and legal contentions.

## III.    DISCUSSION

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both that: (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The first prong of *Strickland*, the performance prong, requires the petitioner to "'show that counsel's representation fell below an objective standard of reasonableness' measured by 'prevailing professional norms.'" *Lewis v. Wheeler*, 609 F.3d 291, 301 (4th Cir. 2010) (quoting *Strickland*, 466 U.S. at 688). There is a "strong presumption that counsel's conduct falls within the wide

range of reasonable professional assistance," and "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. When making an ineffective assistance of counsel determination, a court must consider "the practical limitations and tactical decisions that counsel faced." *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). The second prong of *Strickland*, the prejudice prong, requires the petitioner to show that counsel's errors were serious enough to deprive the petitioner of a fair trial. *Strickland*, 466 U.S. at 687. In essence, the petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. If it is clear the petitioner has failed to satisfy either prong of the *Strickland* standard, a court need not inquire into whether he satisfied the other. *Id.* at 697.

Petitioner's § 2255 Motion alleges ineffective assistance of counsel because counsel did not move for a two-point downward departure pursuant to former Attorney General Janet Reno's April 28, 1995 Memorandum Regarding Deportation of Criminal Aliens ("1995 Memorandum") (Gov'ts Resp., Ex. 2) and former Attorney General John Ashcroft's September 2003 Memorandum Regarding Department Principles for Implementing a Fast-Track Program ("Ashcroft Memorandum") (Gov'ts Resp., Ex. 3). (§ 2255 Mot. at 5.) In response, the Government argues that (1) the 1995 Memorandum did not establish a mandatory policy, and the United States would not have recommended a two-level reduction in this case, (Gov'ts Resp. at 7); and (2) the "fast-track" program was not implemented in the Eastern District of Virginia at the time the case was resolved, and regardless, Petitioner would not have qualified for such program, (*id.* at 9).

First, the 1995 Memorandum issued by the former Attorney General Janet Reno provided "general overview and policy guidance" with regards to "stipulated administrative deportation in plea agreements." (*See* Gov'ts Resp., Ex. 2. at pg. 1.) "To obtain such stipulations, prosecutors *may* agree to recommend a one or two level downward departure from the

applicable guideline sentencing range in return for the alien's concession of deportability and agreement to accept a final order of deportation." (*Id.* at pg. 2) (emphasis added). As the Government's response suggests, the 1995 Memorandum did not create a mandatory policy. Rather, the use of the word "may" clearly intended for the policy to be discretionary. Moreover, the Government submits that this policy has not been adopted by the Eastern District of Virginia in resolving its cases. (Gov'ts Resp. at 7.) Therefore, Petitioner cannot establish that his counsel's performance fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 687, as any request for a downward departure would have been flatly rejected. Because Petitioner cannot satisfy the *Strickland* standard, *see id.* at 697, his claim must be denied.

Second, Petitioner's argument regarding the Ashcroft Memorandum and the "fast track" program must also fail. As Judge Payne described in *United States v. Hernandez-Montealegre*, 445 F. Supp. 2d 646 (E.D. Va. 2006),

> Fast-track programs began informally in districts along the Mexican border, where district courts were increasingly overwhelmed by high caseloads related to immigration violations. To alleviate this burden, federal prosecutors engaged in charge-bargaining and agreed to move for downward departures in return for expedited guilty pleas. Congress formally sanctioned such early disposition programs in the Prosecutorial Remedies and Tools Against the Exploitation of Child Today Act of 2003 ("PROTECT Act") . . . , in which it authorized the Attorney General to create and implement programs to aid jurisdictions overwhelmed by high caseloads related to a particular offense or category of offenses. Congress also directed the Sentencing Commission to promulgate a policy statement authorizing a departure of not more than four levels in cases where the United States moved for a downward departure pursuant to an early disposition program. The Commission complied in U.S.S.G. § 5K3.1.

445 F. Supp. 2d at 658. The Ashcroft Memorandum "sets forth the general criteria that must be satisfied in order to obtain Attorney General authorization for 'fast-track' programs and the procedures by which U.S. Attorneys may seek such authorization." (Gov'ts Resp., Ex. 3, at pg. 1.) The Ashcroft Memorandum specifies that "these programs are reserved for exceptional circumstances." (*Id.*) Although the Deputy Attorney General authorized fast-track programs in 13 districts for illegal reentry offenses under 8 U.S.C. § 1326, "no such early disposition program

has been authorized in the Eastern District of Virginia." 445 F. Supp. 2d at 659. Because fast-track programs are not recognized in the Eastern District of Virginia, *id.*, Petitioner cannot demonstrate that counsel's failure to request a downward departure based on the Ashcroft Memorandum fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687. Any such request would have been "flatly rejected." (Gov'ts Resp. at 10.)

### IV.     <u>CERTIFICATE OF APPEALABILITY</u>

A district court that enters a final order denying a § 2255 motion must grant or deny a certificate of appealability. Rule 11(a) of the Rules Governing Section 2255 Proceedings. A certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336–38 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Miller-El*, 537 U.S. at 336–38 (citing *Slack*, 529 U.S. at 484). For the reasons stated more fully above, no law or evidence suggests Petitioner is entitled to further consideration of his claims. Accordingly, the Court DENIES a certificate of appealability.

### V.     <u>CONCLUSION</u>

For the foregoing reasons, the Court hereby DENIES the § 2255 Motion and DENIES a certificate of appealability.

Let the Clerk send a copy of this Memorandum Opinion to the *pro se* Petitioner and all counsel of record.

An appropriate Order shall issue.

_____/s/_____
James R. Spencer
Senior U. S. District Judge

ENTERED this ___10th____ day of June 2015.

6